UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

GLOBAL HOLDINGS, LLC,      )
      )
    Plaintiff,      )    Civil No. 3:19-cv-00077-GFVT-EBA
      )
V.      )
      )    **MEMORANDUM OPINION**
NAVIGATORS MANAGEMENT      )    **&**
COMPANY, *et al.*,      )    **ORDER**
      )
    Defendants.      )

*** *** *** ***

This case arises from an insurance coverage dispute. Plaintiff Global Holdings, LLC alleges that Defendants breached an insurance contract by failing to defend Global in an Ohio state court action. [R. 1-1 at 8.] Global also claims that, in doing so, Defendants acted in bad faith and violated the Kentucky Unfair Claims Settlement Practices Act. *Id.* at 8–10. Pending before the Court are Global's Motion for Partial Summary Judgment on the issue of the duty to defend and Defendants' Cross-Motion for Summary Judgment on the issues of the duty to defend and duty to indemnify. [R. 12; R. 19.] For the reasons set forth below, the Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendants' Cross-Motion for Summary Judgment is **GRANTED**.

**I**

Global is a Kentucky company that operates fitness clubs in various states, including the state of Ohio. [R. 12-4 at 2.] In 2010, Global purchased insurance from Defendant Navigators Insurance Company, with an effective period of February 1, 2010 through September 1, 2011. [R. 12-2 at 44.] Under the "claims-made policy," Navigators was to defend Global against

certain legal claims made against it.  *Id.* at 2.  And, as is often the case, the policy also provided

that various types of claims against Global would be excluded from coverage.  *Id.* at 14–16.

In April 2011, a class action lawsuit was filed against Global in Ohio state court, entitled

*Amber Gascho v. Global Holdings, LLC d/b/a Urban Active*, Case No. 11-CV-H-04697.  The

*Gascho* action alleged that Global engaged in a variety of wrongful conduct towards members

and prospective members.  [*See* R. 1-1 at ¶ 10.]  As alleged in the *Gascho* plaintiffs' Second

Amended Complaint, among other things, Global aggressively solicited individuals to sign

membership contracts and then aggressively solicited members to sign additional contracts;

commonly misrepresented the terms and duration of these contracts; overcharged members'

accounts; avoided cancellations and otherwise made cancellations as difficult as possible; and

provided inaccurate information regarding cancellations.  [R. 12-4 at 32–33 (Page ID # 362–63).]

As a result of these allegations, the *Gascho* plaintiffs asserted the following claims against

Global: violation of the Ohio Consumer Sales Practice Act; violation of the Ohio Prepaid

Entertainment Contract Act; violation of the Ohio Deceptive Trade Practices Act; unjust

enrichment; conversion; and breach of contract.  *Id.* at 45–53 (Page ID # 375–83).

When the above suit was brought, Global notified Navigators[1] and requested coverage

under the insurance policy.  [*See* R. 12-1 at 2.]  Navigators declined to defend or indemnify

Global.  [*See* R. 12-3.]  Its sole basis for denying coverage was an exclusion in the insurance

policy providing that coverage was not available to Global for certain "contractual liability"

claims.[2]  [*Id.*; R. 12-2 at 16.]

---

[1] Defendants argue that "Defendants NMC and Nav Pro did not write or issue the Policy and, therefore, are not proper parties to this action."  [R. 19-1 at 4.]  As such, Defendants' briefing refers solely to Defendant Navigators Insurance Company when making its arguments.  The Court will similarly refer solely to Navigators Insurance when referencing Defendants' arguments, while noting that, to this point, there has been no motion to dismiss or stipulation of dismissal as to the other two defendants.

[2] It is undisputed that the *Gascho* action was brought during the policy's effective period.  [*See* R. 12-3.]

Now, following the conclusion of the *Gascho* action, Global argues that Navigators wrongfully denied coverage and seeks a ruling that Navigators owed a duty to defend.[3]  [R. 12.] In response, Navigators continues to argue that it properly denied coverage based on the contractual liability exclusion in the policy and seeks a ruling to that effect.  [R. 19.]  Thus, the only issue presently before the Court is whether the contractual liability exclusion within the policy was applicable as to the *Gascho* claims such that declination of coverage was proper.

## II

## A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'"  *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).  Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial.  Fed. R. Civ. P. 56; *Hall*

---

[3] Federal jurisdiction is proper in this case pursuant to 28 U.S.C. § 1332, as the amount in controversy is met and there is diversity of citizenship between the parties.  [*See* R. 1 at ¶¶ 7–8.]

*Holding*, 285 F.3d at 424 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Here, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

## B

The insurance policy was issued to Global in Kentucky [*see* R. 12-1 at 1 n. 1] and, therefore, in this diversity action, substantive Kentucky law applies. Under Kentucky law, it is well-established that "[i]nterpretation and construction of an insurance contract is a matter of law for the court." *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002) (citations omitted). To determine whether an insurer has a duty to defend, a court compares the allegations in the underlying complaint with the terms of the insurance policy. *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) (citation omitted). A duty to defend exists where "the language of an underlying complaint against the insured brings the action within the scope of the insurance contract." *Id.* Notably, "an insurer has a duty to defend if there is any allegation [in the complaint] which potentially, possibly or might come within the

coverage terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 841 (Ky. 2005).

Kentucky courts apply two "cardinal principles" in undertaking the duty to defend inquiry: "(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and, (2) exceptions and exclusions should be strictly construed to make insurance effective." *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992) (internal quotations and citations omitted). "But such canons are applicable only when the language of the insurance contract is ambiguous or self-contradictory." *Hammons v. Ohio Cas. Ins. Co.*, No. CIV. A. 09-30-KSF, 2009 WL 1505548, at *2 (E.D. Ky. May 28, 2009) (citation omitted). As with any contract, unambiguous terms in an insurance contract must be construed according to their plain and ordinary meaning. *See Kentucky Ass'n of Ctys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005) (citation omitted). In the absence of ambiguity, terms will be enforced as written. *Id.*

## C

In line with the above principles, the present analysis will be confined to comparison of the policy's terms to the allegations in the *Gascho* complaint. Only after careful comparison can the Court resolve the key issue: whether the "contractual liability" exclusion within the policy was applicable as to the *Gascho* claims such that declination of coverage was proper.

## 1

To properly analyze the parties' arguments concerning the applicability of the contractual liability exclusion, the Court will first consider which portion of the insurance policy is implicated by the *Gascho* claims, exclusions aside. This issue does not require involved

analysis.[4]  Here, more broadly, the parties agree that the "Directors and Officers Liability Coverage Part" is the relevant portion of the policy.  [R. 12-1 at 7; R. 19-1 at 4–6.]  As provided in Section I of this Coverage Part, there were four separate "insuring agreements," each of which covered different types of claims.  [R. 12-2 at 12.]  Only one of these insuring agreements is implicated in this case—Insuring Agreement C.

Insuring Agreement C explicitly covered claims against Global itself.  And, the *Gascho* claims were brought against a sole defendant, Global.  [*See* R. 12-4 at 27–28 (Page ID # 357–58).]  The other insuring agreements are not implicated here, as they either covered derivative actions against Global or claims "first made against" Global's employees or high-level officers, not Global itself.  [*See* R. 12-2 at 12, 13.]  So, exclusions aside, it appears the insurance policy would provide coverage under Agreement C for the *Gascho* claims.  The analysis, of course, does not end there.

As noted, in defense of its denial of coverage, Navigators argues solely that the Section III.B contractual liability exclusion applied to exclude coverage of the *Gascho* claims.  This exclusion states, in relevant part,[5] as follows: "The Insurer will not be liable under the Optional Entity Coverage under INSURING AGREEMENT C . . . in connection with any **Claim** made against the **Company**" if the claim is sufficiently related to "any liability under any contract or agreement." [R. 12-2 at 16 (emphasis in original).]  Global disagrees with Navigators'

---

[4] On this issue, the parties appear to agree that, exclusions aside, the *Gascho* claims would otherwise be covered under Agreement C.  [*See* R. 12-1 at 3; R. 12-3.]  That said, due to the importance of this preliminary issue, the Court will briefly lay out the basis for application of Agreement C.

[5] The entire exclusion is excerpted in Section II.B.2, *infra*, where the Court analyzes Global's second argument—that the exclusion was inapplicable based on the extracontractual nature of certain of the *Gascho* claims.

interpretation and application of this exclusion and advances two arguments in support of its position that the exclusion is inapplicable as to the *Gascho* claims.

2

Global first argues that the "severability of exclusions" provision in Section III.C of the policy restricted the scope of the contractual liability exclusion such that it could not apply to the *Gascho* claims.[6]  Before proceeding to the parties' respective arguments on this matter, review of the purpose of severability of exclusions clauses is instructive.  The court in *TranSched Sys. Ltd. v. Fed. Ins. Co.*, a case cited by both parties, analyzed a similar provision—both in terms of language and purpose.  67 F. Supp. 3d 523, 531–32 (D.R.I. 2014).  On this latter issue—purpose—the Court finds the *TranSched* court's careful analysis to be both logical and informative.  The court there explained that the purpose of such a provision is to "prevent an innocent insured . . . from losing coverage resulting from the conduct of any employee, *except* for the conduct of the high-level enumerated positions." *Id.* at 532.  Exclusions from coverage will apply, and the company will face liability, where claims in the underlying litigation stem from the acts of high-ranking officers.  This of course makes sense as it is "high-ranking executives who have a high level of knowledge and accountability within the company and who have the authority to direct its plans and future." *Id.*

This purpose is clear from the language of the severability provision at issue in this case.  It states: "For the purpose of determining the applicability of the foregoing exclusions . . . only the **Wrongful Acts** of any president, chief executive officer or chief financial officer of the **Company** [Global] shall be imputed to the **Company**."  [R. 12-2 at 17 (emphasis in original).]

---

[6] Both parties refer to the Section III.C provision as a "severability of exclusions" provision.  [R. 20 at 7; R. 22 at 8.]  On review of relevant case law, the Court adopts this apt label.  *See, e.g.*, *First Nat. Bank of Ely v. Progressive Cas. Ins. Co.*, No. 3:11-CV-00859-RCJ, 2012 WL 5944847, at *10 n. 5 (D. Nev. Nov. 27, 2012).

Global takes this provision one step further.  It interprets this provision to mean that "with respect to claims asserted against the Company, the exclusions apply only if the alleged wrongful acts were done by the president, CEO, or CFO." [R. 20 at 7.]  So, Global argues that here, where the Company was named as Defendant "and the factual allegations implicate conduct by lower level employees, the exclusions do not apply." [R. 21 at 8.]  In return, Navigators argues the provision "is simply not implicated here" because the claims were brought against Global itself, not any of its employees.  [R. 22 at 10–11.]

Distilled down, Global's argument on this issue can be broken into three parts.  First, the basic premise underlying its argument is that the *Gascho* claims must have been predicated on some wrongful act taken by an individual or individuals within Global.  So, second, because the *Gascho* claims do not specifically name the president, CEO, or CFO as committing any wrongful acts, the claims must be predicated on the wrongful acts of other employees.  And third, because the severability of exclusions provision provides that only the wrongful acts of the president, CEO and CFO can be imputed to Global for purposes of applying the exclusions, the exclusions cannot apply in this case.  Global's argument ignores the true nature of the *Gascho* claims.

To Global's point, it is well established that "a corporation does not act on its own, but through its agents." *Deschamps v. Bridgestone Americas, Inc. Salaried Employees Ret. Plan*, No. 15-6112, 2016 WL 4728029, at *7 (6th Cir. Sept. 12, 2016); *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001).  In the eyes of the law, however, all agents' actions are not made equal—courts distinguish between which agents' actions and knowledge can be imputed to the company for liability purposes.

In this context, the actions of directors or key officers, such as the president and vice president, are treated differently than other employees.  *See In re Hellenic Inc.*, 252 F.3d 391,

395 (5th Cir. 2001) (citing various cases in support of this proposition).  Generally, "[t]he acts of a corporation's vice-principals are considered to be the acts of the corporation itself and are imputed to the corporation [such that] the liability of a corporation for the acts of its vice-principals is direct rather than vicarious."  *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 355 (5th Cir. 2013) (Jolly, J., concurring) (citation omitted).  The differential treatment as to which employees' actions presumptively constitute the actions of the company for liability purposes makes sense as, again, it is "high-ranking executives who have a high level of knowledge and accountability within the company and who have the authority to direct its plans and future."  *TranSched Sys.*, 67 F. Supp. 3d at 532.

In the *Gascho* action, the plaintiffs sought to hold Global liable based on alleged top-down policies and practices.  [*See* R. 12-4 at 32–33 (Page ID # 362–363).]  So, in recognition of the relevant legal precepts, the plaintiffs bypassed any need to name the employees allegedly responsible for these company-wide policies and practices and simply brought the claims directly against the company itself.  True, Global's lower-level employees were alleged to have carried out these policies and practices, for example, in the form of avoiding cancellations.  *Id.* at 35 (Page ID # 365).  But based on the language of the *Gascho* complaint, these actions were simply evidence of Global's company-wide policies and practices, which it "specifically instructed its employees" to abide by.  *Id.* at 33 (Page ID # 363).  In ignoring these realities, Global attempts to turn what were direct claims against it into vicarious liability claims.

In addition to ignoring the true nature of the claims, the analysis that Global puts forth on this issue is simply unworkable.  Global effectively argues that because one of its officers was not explicitly named in the *Gascho* complaint, the claims must be based on the wrongful acts of one of its lower level employees.  This misses the point, for two main reasons.  First, as noted,

9

the claims were made against Global itself and took issue with Global's company-wide "policies and practices." [*See* R. 12-4 at 32–33 (Page ID # 362–63).] If any employees' actions were at issue, it was the corporation's high-level officers who ordinarily set company policy—even if these officers were not expressly named. Second, even if the Court attempted to decipher exactly which individual actors were implicated, the *Gascho* complaint offers no explanation on the issue of who promulgated the allegedly improper policies or practices.[7] Any conclusion as to exactly whose wrongful acts served as the predicate for Global's liability would necessarily rely almost wholly on conjecture. The Court declines to ignore the true nature of the claims and engage in this type of misguided inquiry.

Of course, this is not to say that any claim technically brought against Global as an entity cannot be based on imputed liability. If claims were brought against Global based specifically on wrongful acts of certain employees, as opposed to broad allegations of improper company-wide policies, then the analysis might very well be different. *See TranSched Sys.*, 67 F. Supp. 3d at 531–33. But that is not the present case. Any attempt to turn the *Gascho* claims into imputed liability claims would lead to a confusing result and allow the severability of exclusions provision to do substantially more work than the drafter intended. *See Holzknecht v. Kentucky Farm Bureau Mut. Ins. Co.*, 320 S.W.3d 115, 122 (Ky. Ct. App. 2010). The Court finds, in view of the nature of the *Gascho* claims, that the severability of exclusions provision was inapplicable and is irrelevant to the remaining analysis.

**3**

The Court now turns to Global's second argument. Here, Global argues that, based on the language of the contractual liability exclusion, Navigators wrongly applied the exclusion to

---

[7] And Global offers no other explanation on this matter.

certain of the "extracontractual" *Gascho* claims.  [R. 12-1 at 3 n. 3.]  Before laying out the

parties' specific arguments, brief review of the contractual liability exclusion and the *Gascho*

complaint allegations is necessary to better frame the specific issue before the Court.

> The exclusion states as follows:
>
> The Insurer will not be liable under the Optional Entity Coverage under INSURING AGREEMENT C, if purchased, to make any payment of **Loss**, including **Costs of Defense**, in connection with any **Claim** made against the **Company**:
>
> 1.  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement; provided, however, that this exclusion will not apply to the extent the **Company** would have been liable in the absence of such contract or agreement[.]

[R. 12-2 at 16 (emphasis in original).]  As for the allegations in the complaint, the Second

Amended complaint asserted seven causes of action against Global.  [R. 12-4 at 45–53 (Page ID

# 375–83).]  These included four state statutory claims—alleging violation of the Ohio

Consumer Sales Practices Act (Counts I and II), violation of the Ohio Prepaid Entertainment

Contract Act (Count III), violation of the Ohio Deceptive Trade Practices Act (Count IV)—and

three non-statutory claims for unjust enrichment (Count V), conversion (Count VI), and breach

of contract (VII).  *Id.*  In broad terms, the *Gascho* plaintiffs alleged that Global aggressively

solicited individuals to sign membership and personal training contracts, misrepresented the

terms of those contracts, and, after signing, avoided cancellations of the contracts and charged

members' accounts for more than the contracts allowed.  [R. 12-4 at 32–33 (Page ID # 362–63).]

The question here is whether, based on the language of the exclusion, each of the above *Gascho*

claims were sufficiently related to "any liability" under "any contract or agreement" such that the

exclusion was properly applied to exclude coverage.  *See Westfield Ins.*, 336 F.3d at 507.

11

It is on this question that the parties' respective arguments become more nuanced. Global argues that the exclusion "explicitly applies only when a claim involves 'liability under' any contract," and, thus, because the allegations underlying the statutory claims in the *Gascho* complaint "assert that Global [] committed wrongful acts *outside of the contract*," the contractual liability exclusion does not apply.  [R. 12-1 at 9, 11 (emphasis in original).]  Navigators disagrees, contending that "Global misreads the Contract Exclusion and the allegations set forth in the lawsuit against it and repeatedly mischaracterizes the breadth of the language."  [R. 19-1 at 9.]  In Navigators' view, the exclusion does apply because "[a]ny statutory or tort theories pleaded by the class against Global exist because of the contractual relationship created by the membership agreements."  *Id.* at 12.

The breadth of the exclusionary language is key.  The exclusion states that Navigators was not to be liable for any claim made against Global "based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement."  [R. 12-2 at 16.]  This unambiguous wording is quite expansive.  Indeed, as stated by Sixth Circuit when construing a similar exclusion, such policy language is "staggeringly broad."  *US HF Cellular Commc'ns, LLC v. Scottsdale Ins. Co.*, 776 F. App'x 275, 289 (6th Cir. 2019).

In contrast, the two main cases Global cites in support of its position are of limited use given the narrower wording of the exclusions in those cases.  [*See* R. 12-1 at 9–11 (citing *Ace European Grp. Ltd. v. Abercrombie & Fitch Co.*, 621 F. App'x 338 (6th Cir. 2015), and *TranSched Systems*, 67 F. Supp. 3d 523).]  For example, the *Ace European* court focused on the "arising out of" language within a similar contractual liability exclusion to determine if claims were excluded from coverage.  621 F. App'x at 341.  And, applying Ohio law that required "a

12

causal connection to find that one cause of action 'arises out of' another," it held that the contractual liability exclusion did *not* apply.  *Id.* at 341–42.  Reaching the same result here would require the Court to ignore the full text of the present provision which excludes not only claims "arising out of" contractual liability, but also claims "directly or indirectly resulting from or in consequence of, or in any way involving any" contractual liability.  [R. 12-2 at 16.]

Courts have regularly applied the type of exclusionary language present in the Navigators policy to exclude a broad number of claims, in line with its plain meaning.  *See, e.g., US HF Cellular*, 776 F. App'x at 288; *Outdoor Venture Corp. v. Philadelphia Indem. Ins. Co.*, No. 6:16-CV-182-KKC, 2018 WL 4656400, at *12 (E.D. Ky. Sept. 27, 2018).  In *Outdoor Venture*, for example, the policy exclusion before the court similarly excluded coverage of any claim that "indirectly result[ed] from" or "in any way involv[ed]" a breach of contract.  2018 WL 4656400, at *12.  The court held that various types of "extracontractual claims" were excluded from coverage by the exclusion, explaining that such exclusionary language encompasses a broader range of claims than an exclusion that simply encompasses claims "arising out of" an alleged breach.  *Id.* at *13; *see also W3i Mobile, LLC v. Westchester Fire Ins. Co.*, 632 F.3d 432, 437 (8th Cir. 2011).  Applying the present exclusion, which uses the same sweeping language, similarly works to exclude each of the *Gascho* claims from coverage, such that Navigators properly denied coverage.

First, the contractual liability exclusion obviously excludes coverage of the breach of contract claim (Count VII).  [R. 12-4 at 53 (Page ID # 383) ("Defendant engaged in a common policy and practice of breaching its contracts by . . . .").]  And, as to the six remaining claims, five expressly note the relevance of Global's contractual liability.  For example, an allegation underlying the unjust enrichment claim (Count V) states that "[c]ontrary to their agreement,

13

[Global] deducted money from the accounts of Plaintiffs and the Class members *without any basis in the contracts* or any agreement from the Plaintiffs and the Class members." *Id.* at 51 (Page ID # 381).  Similarly, an allegation underlying the conversion claim (Count VI) states that "[t]he unauthorized and improper deductions by Defendant from Plaintiffs' accounts, *taken outside the terms of their contracts and/or after their contracts have terminated*, constitute conversion of property." *Id.* at 51–52 (Page ID # 381–82).  Based on the plain language of the allegations, each of these five claims "indirectly resulted[ed] from" or in some way involved Global's alleged contractual liability.  *See US HF Cellular*, 776 F. App'x at 289.

The only claim that does not expressly note the relevance of Global's contractual liability is Count IV, which alleges a violation of the Ohio Deceptive Trade Practices Act.  *Id.* at 50 (Page ID # 380–81).  But brief review reveals that the alleged deceptive trade practices were related to Global's apparent misrepresentation of the "standard, quality, or grade" of its services—services that the *Gascho* plaintiffs were to receive under the membership contracts.  [*Compare* R. 12-4 at 50 (Page ID # 380), *with* R. 12-4 at 32–33 (Page ID # 362–63).]  Consequently, this claim also falls within the broad reach of the contractual liability exclusion.

In sum, the allegations underlying each of the seven separate claims in the *Gascho* complaint were, by the unambiguous terms of the exclusion, sufficiently related to liability arising under contracts.  At the very least, each of the claims "indirectly result[ed] from" or in some way involved liability that arose under the membership contracts—the very basis for the *Gascho* plaintiffs' relationship with Global.  Consequently, Navigator's decision to deny coverage based on the exclusion was proper.

Global advances one more related argument.  It argues that the exclusion did not apply based on the language in the final sentence stating, "this exclusion will not apply to the extent the

Company would have been liable in the absence of such contract or agreement." [R. 12-1 at 10–11.]  In Global's view, this renders the exclusion inapplicable as liability for the extracontractual claims would have attached "irrespective of the contract." *Id.*  This argument is well taken.  An inquiry into whether the claims indirectly resulted from or in any way involved Global's alleged "contractual misconduct" is certainly a separate inquiry from one determining whether any of these claims could have been raised separate from the contract.  But Global's argument on this latter inquiry is no more persuasive than its initial argument and, again, fails to acknowledge the significance of the contracts as to each of the claims.

Ultimately, when looking at the allegations underlying each *Gascho* claim, none could have been raised absent the underlying contracts.  *See Outdoor Venture*, 2018 WL 4656400, at *13; *see also Office Depot Inc. v. AIG Specialty Ins. Co.*, No. 2:15-CV-02416-SVW-JPR, 2019 WL 4570011, at *5 (C.D. Cal. June 21, 2019), *appeal docketed*.  Each claim was premised on Global's wrongdoing as it related to the formation of the contracts and the wrongdoing that occurred as within the contractual relationships.  For example, Count II of the *Gascho* complaint, alleging unconscionable consumer sales practices, states: "Defendant engages in a common policy and practice of unconscionable acts . . . by . . . entering into consumer transactions [the contracts] that Defendant knew were substantially one-sided in favor of Defendant." [R. 12-4 at 47 (Page ID # 377).]  Similarly, the unjust enrichment claim (Count V) states: "Contrary to their agreement [the contracts], Defendant deducted money from the accounts of Plaintiffs and the Class members without any basis in the contracts or any agreement from the Plaintiffs and the Class members."  *Id.*  The rest of the claims contain similar underlying allegations making clear that none could have been raised absent the contracts.  *See Office Depot*, 2019 WL 4570011, at

*5.  As such, the language at the end of the exclusion does not change the analysis or the ultimate conclusion.  Navigators had no duty to defend in this instance.

### D

Under Kentucky law, "if there is no duty to defend, then there is no duty to indemnify because the duty to defend is broader."  *Nautilus Ins. Co. v. Structure Builders & Riggers Mach. Moving Div., LLC*, 784 F. Supp. 2d 767, 771 (E.D. Ky. 2011) (citation omitted).  As such, based on the above holding, Navigators had no duty to indemnify Global and is also entitled to summary judgment on that issue.  Finally, having found that Navigators had no duty to defend or indemnify Global, all four of Global's present claims must be dismissed.  *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (citing *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846–47 (Ky. 1986) (Leibson, J., dissenting)).

### III

Sophisticated parties like Global are free to negotiate their contracts to remove coverage exclusions or otherwise restrict their scope.  *See Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 242 (6th Cir. 1994)*.*  Here, Global failed to do so, and this Court must respect the expansive language of the exclusion and, for that matter, follow the relevant case law construing such language.  Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.   Plaintiff Global's Motion for Partial Summary Judgment **[R. 12]** is **DENIED**;

2.   Defendants' Cross-Motion for Summary Judgment [**R. 19**] is **GRANTED**;

3.   Plaintiff's Complaint [**R. 1-1**] is **DISMISSED WITH PREJUDICE**;

4.   Defendants' Motion to Bifurcate and Stay Discovery [**R. 26**] is **DENIED AS MOOT**;

5.   Plaintiff's Motion for Leave to Amend Complaint [**R. 38**], made simply for the purpose of providing clarity, is **DENIED AS MOOT**; and

6.   This case is **STRICKEN** from the Court's active docket.

This the 9th day of June, 2020.

Gregory F. Van Tatenhove
United States District Judge